**LEE TIN MEW, Appellant,**

v.

**William S. JONES, United States Immigration and Naturalization Service, Appellee.**

No. 16059.

United States Court of Appeals Ninth Circuit.

April 10, 1959.

N. W. Y. Char, Honolulu, Hawaii, for appellant.

Louis B. Blissard, U. S. Atty., Charles B. Dwight, III, Asst. U. S. Atty, Honolulu, Hawaii, for appellee.

Before POPE, FEE and CHAMBERS, Circuit Judges.

JAMES ALGER FEE, Circuit Judge.

On May 7, 1958, William A. Hogan, District Director of Immigration and Naturalization Service, issued an administrative subpoena directing Lee Tin Mew to appear and give testimony at the office of the Service in Honolulu, Territory of Hawaii, pursuant to the provisions of Section 235 of the Immigration and Nationality Act. Although an attempt to serve the subpoena at the home of Lee Tin Mew failed, his attorney appeared with appellant at the place designated and requested that the subpoena be served and the testimony taken. Lee Tin Mew was sworn before William S. Jones, described as an Investigator of the Service. Before the oath was administered, Investigator Jones gave him the following advice:

"Q. Mr. Lee you are advised that I am an investigator for the United States Immigration and Naturalization Service. You have been served with a subpoena this morning requiring you to be present and testify. Any statements you make must be voluntary and may be used by the Government in any subsequent criminal or deportation proceeding. Do you understand? A. Yes."

Apparently Lee Tin Mew understood only too well, for he answered only a few questions concerning his names and thereafter refused to answer any and all inquiries. Investigator Jones then petitioned for and obtained an order from the United States District Court ordering Lee Tin Mew to appear and testify. Thereafter, a motion to quash the order, together with an affidavit, was filed. The District Court denied the motion after argument. This appeal followed.

As will hereafter appear, the questions in this appeal could have been

defined with clarity if Lee Tin Mew had appeared before the officer after the court sustained the subpoena and then based refusal to answer specific questions on various grounds available to him. Both parties claim that the order is presently appealable. And United States v. Vivian, 7 Cir., 217 F.2d 882, 883, so holds.

The government did not in any of the proceedings lay sufficient foundation to establish the authority of Investigator Jones to question Lee Tin Mew under the administrative subpoena here issued in the manner set out. The order, which approves the propounding of the questions asked and apparently directs Lee Tin Mew to answer each and every one, is clearly erroneous.

The statute under which the administrative subpoena was issued, 8 U.S.C.A. § 1225, so far as pertinent, reads:

"The inspection, other than the physical and mental examination, of aliens (including alien crewmen) seeking admission or readmission to or the privilege of passing through the United States shall be conducted by immigration officers, except as otherwise provided in regard to special inquiry officers. All aliens arriving at ports of the United States shall be examined by one or more immigration officers at the discretion of the Attorney General and under such regulations as he may prescribe. Immigration officers are authorized and empowered to board and search any vessel, aircraft, railway car, or other conveyance, or vehicle in which they believe aliens are being brought into the United States. The Attorney General and any immigration officer, including special inquiry officers, shall have power to administer oaths and to take and consider evidence of or from any person touching the privilege of any alien or person he believes or suspects to be an alien to enter, reenter, pass through or reside in the United States or concerning any matter which is mate-rial and relevant to the enforcement of this chapter and the administration of the Service, and, where such action may be necessary, to make a written record of such evidence. Any person coming into the United States may be required to state under oath the purpose or purposes for which he comes, the length of time he intends to remain in the United States, whether or not he intends to remain in the United States permanently and, if an alien, whether he intends to become a citizen thereof, and such other items of information as will aid the immigration officer in determining whether he is a national of the United States or an alien and, if the latter, whether he belongs to any of the excluded classes enumerated in section 1182 of this title. The Attorney General and any immigration officer, including special inquiry officers, shall have power to require by subpoena the attendance and testimony of witnesses before immigration officers and special inquiry officers and the production of books, papers, and documents relating to the privilege of any person to enter, reenter, reside in, or pass through the United States or concerning any matter which is material and relevant to the enforcement of this chapter and the administration of the Service, and to that end may invoke the aid of any court of the United States. Any United States district court within the jurisdiction of which investigations or inquiries are being conducted by an immigration officer or special inquiry officer may, in the event of neglect or refusal to respond to a subpoena issued under this subsection or refusal to testify before an immigration officer or special inquiry officer, issue an order requiring such persons to appear before an immigration officer or special inquiry officer, produce books, papers, and documents if demanded, and testify, and any failure to obey such order of the court may be pun-

ished by the court as a contempt thereof."

No claim is made that the proceeding was one conducted by a Special Inquiry Officer under the provisions of 8 U.S.C.A. § 1252(b).

The warrant issued by the District Director does not recite that the officer is carrying on an inspection of any alien seeking "admission or readmission to or the privilege of passing through the United States." It does not recite that Lee Tin Mew is a "person coming into the United States" who may be required under the enactment to "state under oath" certain matters and "if an alien" to give information on a vastly enlarged scale. The warrant does not state that the purpose of the subpoena is to take evidence "touching the privilege of any alien or person he believes or suspects to be an alien to enter, reenter, pass through or reside in the United States." The subpoena does not state whether the "alien or person he suspects to be an alien" is Lee Tin Mew or one of his three brothers or Mow Sing or the wife or one of the four children of the latter. As to Lee Tin Mew, although the subpoena did not recite he was an alien or a person the Investigator believed or suspected to be an alien or so much as intimate that he was the subject of the investigation, questions were directed to him regarding his citizenship.

■ The whole section seems to be geared to the examination of the qualifications of a person arriving at the border to enter the country and reside therein. There is the question whether the statute was intended to require a person resident in the country to give evidence as to his citizenship. The case of United States v. Minker, 350 U.S. 179, 76 S.Ct. 281, 100 L.Ed. 185, decides this question as to a citizen naturalized by court process adversely to the contention of the government. Lee Tin Mew claimed in the affidavit filed on the motion to quash subpoena that he is a citizen because he claims to have been born in Hawaii on April 4, 1894, and was collectively naturalized. He also claims

therein to have been admitted, upon return to Hawaii, by a Board of Special Inquiry on December 10, 1922. The allegations of the affidavit are, however, not properly before this Court. But the question still remains whether the order of the court was erroneous.

■ After Lee Tin Mew was warned that his testimony must be voluntary and that anything he said might be used against him in a civil or criminal proceeding, he was interrogated over a wide field. He was asked his occupation, whether he was known as "Big Shake," if he ran gambling among the Chinese, whether he had a legitimate occupation, whether he organized the "1350 Club" in 1935, what his occupation was during the war between this country and Germany and Japan, whether he registered for the draft in the 2nd World War.

Can a person claiming to be a citizen be required "voluntarily" to answer such questions when warned that his answers may be used against him in any civil or criminal proceedings simply because the officer believes or suspects him of being an alien?

Lee Tin Mew was also asked questions about Lee Tim Kam and Lee Tim Sau, his alleged brothers, and the family of Mow Sing above noted. He was asked questions which might have been pertinent to his status as a citizen or an alien.

All in all, this examination, as actually conducted, would seem to afford little ground for the immigration officer to apply to the court for the enforcement of this subpoena.

■ The petition to the District Court for enforcement was subject to all the defects above noted as to the subpoena itself. There is no allegation therein that this person concerning whom the examination is to be had is "seeking admission or readmission" or that he is not presently residing permanently in the United States. It does not state that Jones believes or suspects Lee Tin Mew or anyone else of alienage.

The order of the court recites none of this foundation. Although there is a re-

cital in the order that testimony was introduced, no evidence appears in the transcript which might serve as a basis for findings respecting such matters. The order reads in part as follows:

"Ordered that Lee Tin Mew appear before William S. Jones, Investigator, United States Immigration and Naturalization Service, and testify concerning his privilege to reside in the United States and concerning any matter which is material and relevant to the enforcement of the Immigration and Nationality Act of 1952, on Thursday, May 15, 1958, at 9:00 o'clock A.M."

This is apparently a blanket affirmation of the right of the immigration officer to inquire into all the matters gone into in the previous examination without any affirmative proof of the jurisdictional foundation for the command.

The order was erroneous.

Reversed.

POPE, Circuit Judge (concurring).

As I understand United States v. Minker, 350 U.S. 179, 76 S.Ct. 281, 287, 100 L.Ed. 185, it decided that in view of the considerations of policy therein mentioned, it must be held that Congress had carefully differentiated between "a witness who is not the subject of an investigation and the person who is." Accordingly, it was stated that Congress had "not provided with sufficient clarity that the subpoena power granted by § 235(a) extends over persons who are the subject of denaturalization investigations." While appellant here was not the subject of that kind of an investigation, he was clearly the subject of a similar investigation, namely, one looking to deportation. But the policy which was the basis of the Supreme Court's decision in Minker is one which has to do with deportation as well as denaturalization. Said the Court, 350 U.S. at page 188, 76 S.Ct. at page 287: "These considerations of policy, which determined the Court's decisions in requiring judicial as against administrative adjudication of the issue of citizenship in a deportation proceeding and those defining the heavy criterion of proof to be exacted by the lower courts from the Government before decreeing denaturalization, are important guides in reaching decision here."

In my view, the rationale which led to the decision in Minker is equally controlling here. This means that § 235(a), (Title 8 U.S.C.A. § 1225(a)), does not authorize the order appealed from.